UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>GINA MCCARTHY, et al.,<br><br>  Defendants. | Case No. 16-cv-02184-JST<br><br>**ORDER GRANTING MOTION TO INTERVENE**<br><br>Re: ECF No. 10 |

Before the Court is a Motion to Intervene, filed by the San Luis & Delta-Mendota Water Authority and Westlands Water District ("Proposed Intervenors"). ECF No. 10. Plaintiffs and Defendants have both stated that they do not oppose intervention. ECF Nos. 26, 28. The Court will grant the motion.

I.   **BACKGROUND**

This case involves revisions to water quality standards adopted by the California State Water Resources Control Board from 2014 through 2016, in response to drought conditions in California. The revisions affected water plans that regulate water usage, storage, and movement in the Sacramento San Joaquin Delta, ECF No. 1 ("Compl.") ¶¶ 1-3; ECF No. 10 at 8-9. Plaintiffs allege that this delta serves "as critical habitat to a broad array of fish and wildlife," including the Central Valley Steelhead and the North American green sturgeon, and that other species depend on the water quality in the delta, such as the starry flounder and the white sturgeon. Compl. ¶ 3. The revisions lowered allowable river flow levels, increased the proportion of water that can be exported out of the Delta, altered the allowable salinity of the water, and weakened restrictions on when water gates may be opened, all of which has "contributed to severe adverse impacts" on animal species. Id. ¶¶ 6-9; see also ECF No. 10 at 9. Plaintiffs brought this litigation against the Environmental Protection Agency ("EPA"), alleging that the EPA violated the Clean Water Act

("CWA") by failing to review the revisions to a state's water quality standards, as required by Section 303(c). Id. ¶¶ 70-72. They request declaratory and injunctive relief. See id.

Proposed Intervenors moved to intervene on May 4, 2016, approximately two weeks after the complaint was filed. Their motion alleges that the challenged revisions were "temporary urgency change orders" issued by the state water board "in response to extraordinary drought conditions in 2014, 2015, and 2016."[1] ECF No. 10 at 7. They contend that Plaintiffs are incorrect in asserting these changes are subject to EPA review under Section 303. Id. Proposed Intervenors allege that in response to the drought conditions, the California Governor issued proclamations and executive orders "directing, among other actions, that the State Water Board 'consider modifying requirements for reservoir releases or diversion limitations, where existing requirements were established to implement a water quality control plan.'" Id. at 11. State agencies then jointly filed several "Temporary Urgency Change Petitions," in order to "conserve the . . . water supplies to meet multiple purposes including water deliveries to agricultural and urban contractors, as well as for fish and wildlife purposes." Id. These requests were granted in part and denied in part. Thus, Proposed Intervenors contend that the state water board did not change water quality plan objectives or standards, as Plaintiffs allege, but only "temporarily modified water rights conditions in response to an urgent need." Id. at 13.

In regards to Proposed Intervenors' relationship to this case, the San Luis & Delta-Mendota Water Authority states that it is comprised of 28 member water agencies that are responsible for "meet[ing] the water supply needs of over 1.2 million acres of agricultural lands within areas of San Joaquin, Stanislaus, Merced, Fresno, Kings, San Benito and Santa Clara Counties," "provid[ing] water to approximately 100,000 acres of managed wetlands and wildlife refuges," and "support[ing] almost 2 million people within the service areas, including within the City of Tracy and urban areas within Santa Clara County." Id. at 13. It operates and maintains water facilities within the San Joaquin Delta as well as the Delta-Mendota Canal, which is also

---

[1] "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001).

affected by the challenged revisions. Id. at 13-14.

Westlands Water District is "a California water district formed pursuant to California Water Code sections 34000 et seq., and is authorized to intervene in any proceeding involving or affecting the ownership or use of water within the district, or its water supplies." Id. at 14. It is "comprised of over 600,000 acres of farmland within areas of Fresno and Kings Counties, on the west side of the San Joaquin Valley, including some of the most productive agricultural lands in the world," and "holds vested contractual rights to receive up to 1.195 million acre-feet of CVP [Central Valley Project] water per year." Id. However, the water district has received its "full contractual entitlement to CVP water in only two of the past twenty-seven years; indeed, in over half of those years Westlands has received fifty percent or less of its contractual allotment." Id. In both 2014 and 2015, the water district received a zero percent allocation, and its current 2016 allocation is five percent of its allotment. Id.

## II.   JURISDICTION

This Court has jurisdiction over this action pursuant to 33 U.S.C. §1365(a) and 28 U.S.C. §1331, as an action arising under the laws of the United States.

## III.   LEGAL STANDARD

Proposed Intervenors have moved both for intervention as a matter of right and permissive intervention. Because the Court concluded they are entitled to intervention as a matter of right, this order does not address permissive intervention.

Federal Rule of Civil Procedure 24(a)(2) provides for intervention as a matter of right where the potential intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Ninth Circuit has summarized the requirements for intervention as of right under Rule 24(a)(2) as follows:

> (1) [T]he [applicant's] motion must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties

to the action.

Freedom from Religion Found. v. Geithner, 644 F.3d 836, 841 (9th Cir. 2011) (quoting California ex rel. Lockyer v. United States, 450 F.3d 436, 440 (9th Cir. 2006)).  Proposed intervenors must satisfy all four criteria; "[f]ailure to satisfy any one of the requirements is fatal to the application." Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 950 (9th Cir. 2009).  In evaluating motions to intervene, "courts are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention."  United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004).  "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections."  Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001).

## IV.     DISCUSSION

### A.     Timeliness

Timeliness is a "threshold requirement" for intervention under Rule 24(a).  United States v. Oregon, 913 F.2d 576, 588 (1990).  Courts consider three factors when determining whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." County of Orange v. Air California, 799 F.2d 535, 537 (9th Cir. 1986).

Proposed Intervenors point to the early stage of the litigation in this case, noting that they filed their motion to intervene less than two weeks after the case was filed, and before the Court had issued any substantive orders.  ECF No. 10 at 16.  Further, the lack of any opposition from either party suggests there will be no undue prejudice from allowing Proposed Intervenors to intervene.  The Court therefore concludes the motion is timely.

### B.     Protectable Interest

An intervening party must have a "significantly protectable" interest" that is "relating to" the subject of the litigation.  However, a "specific legal or equitable interest" is not required, and it is "generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue."  Wilderness Soc'y v. United States Forest Serv., 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (citations omitted).

4

Proposed Intervenors contend that they have "significantly protectable" interests in the form of contractual rights to water supplies that would likely be affected by the result of this case. ECF No. 10 at 18. They cite to Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001) as support. In Berg, a construction company and several building trade associations sought to intervene in an action challenging conservation plans and issuances of permits based on their environmental impact on endangered species. Id. at 815-817. The Ninth Circuit held that these parties had demonstrated sufficient interests by showing that they were beneficiaries of the "assurances and approval process," set out in a contractually binding "Implementation Agreement," for current and future construction projects. Id. at 820. "Contract rights are traditionally protectable interests." Id. (citation omitted).

The Court concludes that Proposed Intervenors have demonstrated their contractual interests are significantly protectable and related to this matter. Both the Westlands Water District and the San Luis & Delta-Mendota Water Authority, through its member agencies, have alleged contractual agreements with the United States for their water needs. ECF No. 10 at 14, 17. Because the outcome of this litigation could affect the ability of the state water board to revise its water quality standards, which in turn could affect the ability of state agencies to distribute water supplies, Proposed Intervenors' contractual interests are related to this litigation. For these reasons, the Court concludes Proposed Intervenors have significantly protectable interests relating to the property or transaction which is the subject of the action.

### C.     Impairment of Interests

Rule 24(a)(2) next requires that the party seeking intervention is "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." The Ninth Circuit has followed the advisory committee's notes in holding that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 822 (9th Cir. 2001)

Proposed Intervenors contend that the action could impair their interests because Plaintiffs' requested relief of EPA review and approval for "temporary urgent changes" to water quality and

permit standards would "significantly delay and complicate obtaining such urgent changes," and this, in turn, "has direct consequences for the CVP water supplies that the Authority members depend on." ECF No. 10 at 19. They argue that their ability to timely respond to different conditions, such as drought, affects how much water they will likely receive, and quote the State Water Board's decision that "'[f]ailure to act quickly to reduce releases from storage will further deplete already low storage levels in reservoirs available for use throughout the year.'" Id.

The Court is persuaded that the disposition of this action may impair or impede the Proposed Intervenors' ability to protect their contractual interests. The third prong for intervention as of right has been met.

### D. Interests Inadequately Represented by the Parties

"The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." Citizens for Balanced Use v. Montana Wilderness Ass'n, 647 F.3d 893, 898 (9th Cir. 2011) (quoting Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003)). "In evaluating adequacy of representation, we examine three factors: '(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.'" Id.

Proposed Intervenors argue that the EPA does not adequately represent their interests because "it is CVP contractors, like Westlands and the Authority's other member agencies and those members' water users, who will suffer the consequences of reduced CVP water supplies, not the EPA." ECF No. 10 at 22. They cite again to Berg, in which the Ninth Circuit held that neither the City of San Diego nor the Fish and Wildlife Service and other agencies could adequately protect the commercial interests of private contractors. There, the Court wrote:

> [T]he City itself notes two ways in which those interest might diverge: (1) the City's range of considerations in development is broader than the profit-motives animating developers; and (2) developers have different duties under the Plans relating to mitigation. Just as the City could not successfully negotiate the Plans without some private sector participation from Applicants, so too the City in this case cannot be expected successfully to safeguard Applicants' legally protectable interests. Indeed, the City's response to the Applicants' motion acknowledges that it 'will not represent proposed intervenors' interests in this action.' Moreover, FWS,

6

a federal agency, and other defendants also cannot be expected under the circumstances presented to protect these private interests. Applicants would likely offer important elements to the proceedings that the existing parties would likely neglect. The priorities of the defending government agencies are not simply to confirm the Applicants' interests in the Plans, the IA, and the City's ITP. The interests of government and the private sector may diverge. On some issues Applicants will have to express their own unique private perspectives and in essence carry forward their own interests in the IA.

Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 823-24 (9th Cir. 2001).

Similarly here, the Proposed Intervenors are specifically concerned with their own interests in the water supplies affected by the challenged water standards, which are distinct from the interests of the EPA in defending its procedural scheme. The Court therefore cannot conclude that the EPA "will undoubtedly make" all of the Proposed Intervenors' arguments, and accordingly finds that the fourth prong for intervention as of right is met.[2]

## CONCLUSION

The Court concludes that Proposed Intervenors have met the requirements for intervention as of right. It therefore grants the motion without reaching the question of permissive intervention.

IT IS SO ORDERED.

Dated: July 18, 2016

_____
JON S. TIGAR
United States District Judge

---

[2] Proposed Intervenors also request that the Court take judicial notice of seven documents, which are copies of orders and proclamations issued by the California governor, and copies of the Water Quality Control Plan and the challenged decision issued by the California State Water Resources Control Board. ECF No. 13. They argue that all of these documents are judicially noticeable as public records of an official act. Id. (citing to Coal. for a Sustainable Delta v. Fed. Emergency Mgmt. Agency, 812 F. Supp. 2d 1089, 1093 (E.D. Cal. 2011)). The Court grants the request for judicial notice.