1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    NATURAL RESOURCES DEFENSE
     COUNCIL, et al.,                        Case No.  16-cv-02184-JST

8                     Plaintiffs,

9          v.                                **ORDER GRANTING MOTION TO
                                             INTERVENE**
10   GINA MCCARTHY, et al.,                  Re: ECF No. 45

11                    Defendants.

12          Before the Court is a Motion to Intervene, filed by the San Joaquin Tributaries Authority.

13   ECF No. 45.  Defendants have stated that they do not oppose intervention.  ECF No. 49.  Plaintiffs

14   oppose the motion.  ECF No. 50.  The Court grants the motion.

15   I.     **BACKGROUND**

16          This case involves revisions to water quality standards adopted by the California State

17   Water Resources Control Board from 2014 through 2016 in response to drought conditions in

18   California and affecting the Sacramento San Joaquin Delta.  ECF No. 1 ("Compl.") ¶¶ 1, 43-51;

19   ECF No. 45 at 8-9.  The Natural Resources Defense Council, Bay.org d/b/a The Bay Institute, and

20   Defenders of Wildlife (collectively, "Plaintiffs") allege that the Delta "serves as [a] critical habitat

21   to a broad array of fish and wildlife."  Compl. ¶ 3.  The revisions reduced river flows, increased

22   the proportion of water exported out of the Delta, allowed higher salinity water to enter the Delta,

23   and weakened restrictions on when the Delta cross-channel gates could be opened.  Id. ¶¶ 6-7, 9.

24   Plaintiffs allege that the resulting poor water quality has contributed to "severe adverse impacts"

25   on fish and wildlife species.  Id. ¶ 8.  Plaintiffs bring this suit against Gina McCarthy, in her

26   official capacity as Administrator of the United States Environmental Protection Agency ("EPA"),

27   and Jared Blumenfeld, in his official capacity as Regional Administrator of the EPA Region IX,

28   (collectively, "Defendants") for failure to comply with their duty under the Clean Water Act to

United States District Court
Northern District of California

United States District Court
Northern District of California

1    review a state's revisions to water quality standards.  Id. ¶ 1; see 33 U.S.C. § 1313(c).  Plaintiffs

2    request declaratory and injunctive relief.  Compl. ¶ 1.  The San Luis & Delta-Mendota Water

3    Authority and Westlands Water District ("SLDMWA/Westlands") moved to intervene on May 4,

4    2016, approximately two weeks after the complaint was filed.  ECF No. 10.  This Court granted

5    their motion, finding that they were entitled to intervention as a matter of right.  ECF No. 37 at 1,

6    3.

7         The San Joaquin Tributaries Authority ("Proposed Intervenors") moved to intervene on

8    August 10, 2016, and requests that the Court take judicial notice of certain documents.  ECF Nos.

9    45, 45-2.  Their motion to intervene alleges that the challenged revisions were "temporary urgency

10   change orders" that provided for "temporary relief" from meeting certain conditions for water

11   right permits but did not alter the water quality control plan for the San Francisco Bay-

12   Sacramento/San Joaquin Delta Estuary ("Bay-Delta Plan").  ECF No. 45 at 9.  Due to the ongoing

13   drought, the California Governor had issued proclamations and executive orders directing the

14   State Water Resources Control Board ("Board") to "consider modifying requirements for reservoir

15   releases or diversion limitations, where existing requirements were established to implement a

16   water quality control plan."  Id. at 7-8.  Subsequently, the California Department of Water

17   Resources ("DWR") and United States Bureau of Reclamation ("USBR"), which operate water

18   facilities controlling water flow into, through, and out of the Delta, filed "Temporary Urgency

19   Change Petitions" to request that the Board temporarily relax conditions of their water right

20   permits in order to conserve water.  Id. at 8.  The Board approved in part and denied in part these

21   petitions.  Id. at 9.  Proposed Intervenors contend that Plaintiffs conflated the "temporary changes"

22   with "amendments" to water quality standards, and that only the latter would require EPA review

23   under the Clean Water Act.  Id. at 11.

24        Proposed Intervenors are senior water right holders on the Stanislaus and Tuolumne

25   Rivers, tributaries to the San Joaquin River, with their water rights predating those held by the

26   DWR and USBR.  Id. at 10.  Proposed Intervenors are currently not responsible for meeting the

27   water requirements under the Bay-Delta Plan.  Id.  However, the Board has released draft changes

28   to the Bay-Delta Plan that would impose minimum flow requirements on the tributaries to the San

2

Joaquin River, which would affect Proposed Intervenors' water rights, and Proposed Intervenors allege that the Board will include these requirements in future revisions.  Id.

## II.    JURISDICTION

This Court has jurisdiction over this action pursuant to 33 U.S.C. § 1365(a) and 28 U.S.C. § 1331, as an action arising under the laws of the United States.

## III.    REQUESTS FOR JUDICIAL NOTICE

Proposed Intervenors request that the Court take judicial notice, pursuant to Federal Rule of Evidence 201, of documents reflecting official acts of the executive branch of the United States, records of state agencies, and public records available from government agency websites.  ECF No. 45-2.  Federal Rule of Evidence 201(b) states that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

The Court grants Proposed Intervenors' requests for judicial notice.  First, Proposed Intervenors request that the Court take judicial notice of the following documents: (1) "A Proclamation of a State of Emergency" signed by California Governor Edmund G. Brown, dated January 17, 2014; (2) "A Proclamation of a Continued State of Emergency" signed by California Governor Edmund G. Brown, dated April 25, 2014; and (3) Executive Order B-28-14, issued by California Governor Edmund G. Brown, dated December 22, 2014.  Plaintiffs have not filed an opposition to this request.  The Court takes judicial notice of these documents because they "reflect[] official acts of the executive branch of the United States."  Suelen v. Wells Fargo Bank, N.A., No. C-13-002, 2013 WL 1320697, at *5 (N.D. Cal. Apr. 1, 2013).

Second, Proposed Intervenors request that the Court take judicial notice of the following documents: (1) Temporary Urgency Change Petition filed by the DWR and USBR with the Board, dated January 29, 2014; (2) Temporary Urgency Change Petition filed by the DWR and USBR with the Board, dated January 23, 2015; and (3) Temporary Urgency Change Petition filed by the DWR and USBR with the Board, dated March 24, 2015.  Plaintiffs have not filed an opposition to this request.  The Court takes judicial notice of these documents because they are "records of state

agencies, and therefore appropriate subjects of judicial notice." <u>Minor v. FedEx Office & Print Servs., Inc.</u>, 78 F. Supp. 3d 1021, 1027-28 (N.D. Cal. 2015).

Third, Proposed Intervenors request that the Court take judicial notice of the following documents: (1) the Board's Water Rights Decision 1641, revised March 15, 2000; (2) Order of the Board dated Februrary 3, 2015, approving in part and denying in part, the Temporary Urgency Change Petition filed by the DWR and the USBR on January 23, 2015; (3) Revised Order of the Board dated March 5, 2015, modifying the Order of the Board dated February 3, 2015; and (4) Order of the Board dated April 6, 2015, modifying an Order of the Board dated March 5, 2015. Plaintiffs have not filed an opposition to this request. The Court takes judicial notice of these documents because they are matters of public record available on a governmental agency website (the Board's website), and they therefore are capable of ready and accurate determination and are from a reliable source.

## IV.   MOTION TO INTERVENE

Proposed Intervenors have moved both for intervention as a matter of right and permissive intervention. Because the Court concludes they are entitled to intervention as a matter of right, this order does not address permissive intervention.

### A.   Legal Standard

Federal Rule of Civil Procedure 24(a)(2) provides for intervention as a matter of right where the potential intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Ninth Circuit has summarized the requirements for intervention as of right under Rule 24(a)(2) as follows:

> (1) [T]he [applicant's] motion must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

<u>Freedom from Religion Found., Inc. v. Geithner</u>, 644 F.3d 836, 841 (9th Cir. 2011) (quoting

United States District Court
Northern District of California

<u>California ex rel. Lockyer v. United States</u>, 450 F.3d 436, 440 (9th Cir. 2006)). Proposed intervenors must satisfy all four criteria, and "[f]ailure to satisfy any one of the requirements is fatal to the application." <u>Perry v. Proposition 8 Official Proponents</u>, 587 F.3d 947, 950 (9th Cir. 2009). In evaluating motions to intervene, "courts are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." <u>United States v. Alisal Water Corp.</u>, 370 F.3d 915, 919 (9th Cir. 2004). "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." <u>Sw. Ctr. for Biological Diversity v. Berg</u>, 268 F.3d 810, 820 (9th Cir. 2001).

### B. Discussion

#### 1. Timeliness

Plaintiffs do not dispute that Proposed Intervenors' motion—filed only a few months after the Complaint, before Defendants have filed their answer, and before any substantive orders have been issued—is timely. ECF No. 45 at 12; <u>see</u> ECF No. 50 at 5. The Court concludes the Proposed Intervenors' motion is timely.. <u>See</u> <u>Alisal</u>, 370 F.3d at 921 (stating that the timeliness determination is based on the stage of the proceeding, the prejudice to other parties, and the reason for and length of delay).

#### 2. Protectable Interest

"Rule 24(a)(2) does not require a specific legal or equitable interest," and it is "generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." <u>Wilderness Soc'y v. U.S. Forest Serv.</u>, 630 F.3d 1173, 1179 (9th Cir. 2011) (citations omitted).

Proposed Intervenors contend that they have "legally protectable interests" in the form of "appropriative water rights." ECF No. 45 at 13. They cite to <u>Casitas Municipal Water District v. United States</u> for the proposition that "appropriative water rights . . . have long been recognized by California courts as private property subject to ownership and disposition." 708 F.3d 1340, 1354 (Fed. Cir. 2013).

1    Proposed Intervenors acknowledge that existing water quality control plans do not impose

2    any requirements on them, and therefore that the changes challenged by Plaintiffs do not directly

3    impact their interests.  ECF No. 45 at 10.  Nonetheless, Proposed Intervenors allege that the Board

4    has indicated that an updated water quality control plan will impose minimum flow requirements

5    on tributaries to the San Joaquin River, which would affect Proposed Intervenors.  Id. at 13; ECF

6    No. 51 at 8.  They argue that in the future, they may also wish to seek "temporary relief" from

7    these minimum flow requirements, and should Plaintiffs prevail, it would be more difficult to do

8    so if they were required to obtain EPA approval.  ECF No. 45 at 13-14.  Proposed Intervenors

9    additionally assert that if Plaintiffs prevail, the USBR may resort to releasing water from its New

10   Melones facility in order to satisfy requirements at a separate compliance point, and that the

11   Proposed Intervenors have senior rights to that water.  Id. at 14.

12   Plaintiffs argue that the "highly speculative chain of events" needed to occur to impact

13   Proposed Intervenors does not support intervention.  ECF No. 50 at 5.  They analogize to the case

14   of Montana v. United States Environmental Protection Agency, 137 F.3d 1135, 1138-39 (9th Cir.

15   1998), which concerned a challenge to the EPA's decision to permit Indian tribes to promulgate

16   water quality standards, as states do, regulating the discharge of pollutants into water by holders of

17   a National Pollutant Discharge Elimination System ("NPDES") permit.  Because none of the

18   parties seeking intervention held an NPDES permit, the Ninth Circuit concludes that the litigation

19   had "no immediate or any foreseeable, demonstrable effect upon the proposed intervenors."

20   Montana, 137 F.3d at 1141.  Plaintiffs argue that here, Proposed Intervenors' "lack of a 'permit' or

21   other tangible interest that might actually be impacted" also renders their interest too "tenuous" to

22   provide a basis for intervention.  ECF No. 50 at 6.

23   The Court concludes that Proposed Intervenors have demonstrated their interests are

24   significantly protectable and related to this matter.  To begin, it does not appear that the Plaintiffs

25   dispute that if any of the events described by Proposed Intervenors came to pass, they would have

26   an interest in the outcome of the litigation.  As Proposed Intervenors note, water rights are "private

27   property subject to ownership and disposition" and are a legally protectable interest.  ECF No. 45

28   at 10; Casitas, 708 F.3d at 1354.  The question is therefore whether the likelihood of these events

United States District Court
Northern District of California

6

1    occurring is sufficient to support granting intervention.

2         Viewed in this light, Plaintiffs' analogy to <u>Montana</u> is misplaced.  There, not only did the

3    proposed intervenors not hold NPDES permits, but their "uses of the land [were also] not sources

4    of emissions regulated by the Clean Water Act," and thus the litigation had no "foreseeable" effect

5    on them.  137 F.3d at 1138, 1141.  Here, by contrast, the events described by Proposed Intervenors

6    are clearly foreseeable.  The outcome of this litigation could affect the ability of the Board to

7    revise water quality standards and issue temporary urgency change orders, thus impacting

8    Proposed Intervenors' water rights upon either the Board updating the water quality control plan

9    or the USBR releasing water from the New Melones facility.  Proposed Intervenors have further

10   stated that the Board clearly indicated their updated water quality control plan will impose flow

11   requirements on tributaries to the San Joaquin River, and on Proposed Intervenors' water rights.

12   ECF No. 45 at 13; ECF No. 51 at 8.

13        A more comparable case is <u>Southwest Center for Biological Diversity v. Berg</u>, 268 F.3d

14   810 (9th Cir. 2001).  In <u>Berg</u>, an agreement between the City of San Diego and other parties was

15   challenged for failing to comply with the Endangered Species Act.  <u>Id.</u> at 816.  The agreement

16   gave the City the power to give "Third Party Beneficiary status" to construction projects, which

17   prevented the City from imposing additional mitigation or protective measures on those projects.

18   <u>Id.</u> at 815-16.  Though the projects of the proposed intervenors, a construction company and

19   several building trade associations, had not yet attained Third Party Beneficiary status, they were

20   in the "pipeline" for approval and "granted assurances" they would receive it.  <u>Id.</u> at 820, 822.

21   The court concluded that these facts gave the intervenors sufficient legally protectable interests.

22   <u>Id.</u> at 820-21.  Similarly, Proposed Intervenors are not yet subject to water quality control plans,

23   but have demonstrated that they likely will be in the near future.  ECF No. 45 at 13; ECF No. 51 at

24   8.  By the same reasoning, foreseeable obligations give Proposed Intervenors sufficient legally

25   protectable interests to support intervention.

26              **3.      Impairment of Interests**

27        Rule 24(a)(2) requires that the party seeking intervention is "so situated that disposing of

28   the action may as a practical matter impair or impede the movant's ability to protect its interest."

United States District Court
Northern District of California

7

The Ninth Circuit has followed the guidance of Rule 24 advisory committee notes in holding that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Berg, 268 F.3d at 822.

Proposed Intervenors offer two reasons why their interests will be impaired by a decision in favor of Plaintiffs. ECF No. 45 at 15. First, if the Board implements the updated water quality control plan, as it has indicated it will do, Proposed Intervenors' ability to seek temporary relief from conditions affecting their water rights would be adversely affected. Id. Second, Proposed Intervenors allege that if the Board cannot issue temporary urgency change orders, the USBR could be required to release water from the New Melones facility in order to satisfy water requirements, which would affect water rights belonging to Proposed Intervenors. Id. at 15-16. In response, Plaintiffs assert that Proposed Intervenors' "interests are not impaired where [they] ha[ve] 'other means' and 'alternative forum[s]' to protect them," as Proposed Intervenors retain the ability to urge the Board to adopt future orders protecting their interests. ECF No. 50 at 8 (quoting Lockyer, 450 F.3d at 442).

The Court is persuaded that the disposition of this action may impair or impede Proposed Intervenors' ability to protect their water rights. In its previous order granting SLDMWA/ Westlands' motion to intervene, the Court noted that delay in obtaining temporary urgent change orders would affect SLDMWA/Westlands' interests because it could reduce the amount of water they could receive out of the quantity to which they are entitled. ECF No. 37 at 6. The same holds true here. Plaintiffs' citation to Lockyer is unavailing. The "other means" and "alternative forum" mentioned in that case was a "separate process" that "the district court had set up" specifically to approve the types of claims asserted by the proposed intervenors. 450 F.3d at 442. Such an established process is a far cry from Plaintiffs' argument here that Proposed Intervenors, like any other party or private citizen, can "urge" the Board to act in a certain way.

### 4.    Interests Inadequately Represented by the Parties

"The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." Citizens for Balanced Use v. Mont. Wilderness Ass'n, 647 F.3d 893, 898 (9th Cir. 2011) (quoting Arakaki v.

United States District Court
Northern District of California

1    Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003)).  Three factors are examined to evaluate adequacy

2    of representation: (1) whether the interest of a present party is such that it will "undoubtedly"

3    make all of a proposed intervenor's arguments; (2) whether the present party is "capable and

4    willing" to make such arguments; and (3) whether a proposed intervenor would offer any

5    "necessary elements" to the proceeding that other parties would neglect.  Id.

6         Proposed Intervenors argue that the EPA does not adequately address their interests

7    because it would be the Proposed Intervenors, as water right holders, who would suffer if

8    Plaintiffs' relief is granted, not the EPA.  ECF No. 45 at 16.  As with the intervenors

9    SLDMWA/Westlands, the Court cannot conclude that the EPA will undoubtedly make all of

10   Proposed Intervenors' arguments given the two parties' distinct interests.

11        As to whether SLDMWA/Westlands adequately represent Proposed Intervenors' interests,

12   Proposed Intervenors argue that the "parties' interests in this case are simply not sufficiently

13   aligned."  ECF No. 51 at 14.  As SLDMWA/Westlands are customers of the USBR for water

14   supplies, a release of water at New Melones by the USBR would in fact likely benefit

15   SLDMWA/Westlands.  Id.  Plaintiffs argue that the parties share interests because both "seek to

16   retain the existing [temporary urgency change] process without EPA review."  ECF No. 50 at 8-9.

17   But the fact that two parties desire the same outcome in litigation cannot alone defeat intervention

18   – such a rule would effectively curtail the mechanism of intervention entirely.  The Court

19   accordingly finds that the fourth element for intervention as of right is met.

20                              **CONCLUSION**

21        The Court concludes that Proposed Intervenors have met the requirements for intervention

22   as of right.  It therefore grants the motion without reaching the question of permissive

23   intervention.

24        Plaintiffs request that Proposed Intervenors and SLDMWA/Westlands be required to

25   provide joint briefing in order to "avoid delay and duplicative arguments that would prejudice

26   Plaintiffs' ability to obtain a prompt and efficient resolution of its claims."  ECF No. 50 at 10-11.

27   / / /

28   / / /

1    Plaintiffs' request is denied.  As noted above, Proposed Intervenors and SLDMWA/Westlands

2    may potentially possess diverging interests.

3         IT IS SO ORDERED.

4    Dated:  November 3, 2016

5

6    _____
                    JON S. TIGAR
7                   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California