UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GINA MCCARTHY, et al.,<br><br>Defendants. | Case No. 16-cv-02184-JST<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: ECF No. 38 |

Before the Court is Defendants' motion to dismiss Plaintiffs' complaint. The Court will deny the motion.

**I.   BACKGROUND**

  **A.  Factual History[1]**

This case concerns actions taken by the State of California following Governor Edmund G. Brown, Jr.'s January 17, 2014, Proclamation of a "State of Emergency" throughout California due to severe drought conditions. ECF No. 1-1 at 5.[2] In particular, the case focuses on the waters subject to the 1995 San Francisco Bay/Sacramento-San Joaquin Delta Estuary Water Quality Control Plan ("Bay-Delta Plan") and the Water Quality Control Plan for the Sacramento River Basin and San Joaquin River Basin, 4th Edition ("Central Valley Plan"), which implement water

---

[1] The Court accepts the following allegations from the complaint as true for the purpose of resolving both a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996), and a facial attack on the Court's jurisdiction pursuant to Rule 12(b)(1), Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

[2] Page references are to a document's internal pagination and not to the page numbers affixed by the Court's ECF electronic docketing system.

1  quality standards[3] issued by the State Water Resources Control Board (SWRCB) and approved by
2  the EPA.  ECF No. 1 ¶¶ 1, 2, 4.  A 2006 plan issued by the SWRCB updated the 1995 Plan
3  without amending the water quality standards.  Id. ¶ 33.  "After adopting the Bay-Delta [Plan],
4  SWRCB allocated primary responsibility for meeting several of the standards to [the Federal
5  Bureau of Reclamation ("Reclamation")] and [the California Department of Water Resources
6  ("DWR")], as the owners and operators of the dams, reservoirs, canals, and pumps that convey
7  water through the Delta."  Id. ¶¶ 5, 32.  Water Rights Decision 1641 ("D-1641") contains the
8  terms and conditions for the permits that SWRCB issues to water rights holders to meet the
9  objectives of the 1995 Bay-Delta Plan.  Id. ¶ 5.

In the Drought Emergency Proclamation, Governor Brown directed the SWRCB to "consider modifying requirements for reservoir releases or diversion limitations, where existing requirements were established to implement a water quality control plan."  ECF No. 38 at 10.  The Emergency Proclamation also suspended operation of California Water Code Section 13247[4] (which, if not suspended, would require State agencies to comply with water quality control plans approved by the SWRCB).  ECF No. 48-8 at 3.  On December 22, 2014, Brown issued Executive Order B-28-14, which extended the suspension of that Water Code section to May 31, 2016.  ECF No. 48 at 6.  On November 13, 2015, Governor Brown suspended Section 13247 indefinitely.  Exec. Order B-36-15.  Id.

"Following the Governor's Drought Proclamations and Executive Order, water users have filed successive [temporary urgency change] petitions ['TUCPs'] requesting changes to the water

---

[3] "Water quality standards are designed to do two things: first, they designate the use or uses to be made of the water . . . and, second, they set the basic criteria that must be satisfied in order to safely permit those uses.  The second aspect of water quality standards, the water quality criteria, can be expressed in narrative form or in a numeric form, e.g. specific pollutant concentrations." Florida Public Interest Research Grp. Citizen Lobby, Inc. v. EPA ("FPIRG"), 386 F.3d 1070, 1073 (11th Cir. 2004).

[4] Section 13247 provides:

> State offices, departments, and boards, in carrying out activities which may affect water quality, shall comply with water quality control plans approved or adopted by the state board unless otherwise directed or authorized by statute, in which case they shall indicate to the regional boards in writing their authority for not complying with such plans.

2

1  quality standards in the Bay-Delta Plan, as implemented by D-1641." ECF No. 1-1 at 5. "On
2  January 31, 2014, the SWRCB issued an order approving a petition jointly filed by [Reclamation]
3  and [DWR]," which requested to amend the delta outflow objectives, export requirements, and the
4  Delta Cross Channel gate closure requirements. Id.

5  On later dates in 2014, 2015, and 2016, DWR and Reclamation submitted additional
6  TUCPs for revisions to water quality standards in the Bay-Delta and Central Valley Plans, which
7  the SWRCB granted by orders amending or rescinding the requirements of D-1641. ECF No. 1
8  ¶¶ 42-43.

9  Plaintiffs are three different environmental organizations: the Natural Resources Defense
10 Council ("NRDC"), Bay.org d/b/a The Bay Institute ("TBI"), and Defenders of Wildlife
11 ("Defenders"). Id. ¶¶ 16-18. Their complaint seeks declaratory and injunctive relief against
12 Defendants Gina McCarthy, Administrator of the United States Environmental Protection Agency
13 ("EPA"), and Jared Blumenfeld,[5] Regional Administrator for EPA Region IX, for failing to
14 comply with their non-discretionary duty under the Clean Water Act ("CWA"), 33 U.S.C.
15 §§ 1313(c)(2)(A), (c)(3)–(c)(4), to review and take appropriate action regarding revisions to water
16 quality standards in the Bay-Delta and Central Valley Plans. Id. ¶ 1.

17 The EPA, through its enforcement of the CWA, provides federal oversight for water
18 quality standards. Id. "The CWA gives the states the responsibility of adopting and revising
19 water quality standards, but requires that the EPA review and approve any new or revised standard
20 to determine whether it satisfies the requirements of the Clean Water Act and, more specifically,
21 whether it provides adequate protection to fish and wildlife and other designated uses. A new or
22 revised standard cannot go into effect unless and until EPA approves the standard." Id. ¶ 2. "If
23 EPA does not approve the new or revised standard, EPA must give the state an opportunity to cure
24 any defect. If the state fails to do so, then the EPA must promulgate federal water quality
25 standards." Id.

26 The quality standards in place under the Bay-Delta Plan are meant to protect various

---

[5] In their motion to dismiss, Defendants substitute Acting Regional Administrator Alexis Strauss for former EPA Region 9 Administrator Jared Blumenfeld, pursuant to Fed. R. Civ. P. 25(d).

"species of fish and wildlife, and to provide for other beneficial uses of water." Id. ¶ 4. Plaintiffs allege that beginning on January 31, 2014, the temporary orders "revised the Bay-Delta Plan water quality standards by amending" Water Rights Decision 1641, "which establishes terms and conditions for Reclamation's and DWR's licenses and permits," id. ¶¶ 5–6, changing numerical limits on water flow and damaging fish and wildlife populations. Plaintiffs allege that, even though key water quality objectives are already weakened in drought years, the amendment "allowed Reclamation and DWR to further reduce river flows below the minimum levels allowable, to increase the proportion of water that can be exported out of the Delta above the maximum levels allowable, to move salinity compliance locations to allow higher salinity water to enter the Delta, and to weaken restrictions on when the DCC gates may be opened." Id. ¶ 6. "Reclamation and DWR operated under revised standards" provided by multiple TUCPs throughout 2014-2016. Id. These changes "weakened the flow, export, salinity, and DCC gates standards in the Bay-Delta Plan" and "revised the Central Valley Plan water quality standard requiring a minimum level of dissolved oxygen in the lower section of the Stanislaus River." Id. ¶ 7.

### B. Procedural Background

Plaintiffs sent a 60-day Notice of Intent to Sue to the Defendants on October 29, 2015. See 33 U.S.C. § 1365(a); 40 C.F.R. § 135.2(c). ECF No. 1-1. Plaintiffs then filed their Complaint on April 22, 2016. ECF No. 1. On July 18, 2016, Defendants filed a motion to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6), which motion the Court now considers. ECF No. 38.

### C. Jurisdiction

Plaintiffs contend the Court has jurisdiction pursuant to 33 U.S.C. § 1365(a) (Clean Water Act citizen-suit provision), 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C. § 2202 (injunctive relief). Defendants contest jurisdiction under the citizen-suit provision of the Clean Water Act, claiming that there has been no failure to perform any non-discretionary act by the EPA. ECF No. 38. As set forth below, the

4

Court has jurisdiction on each of these bases.

### D. Legal Standards

#### 1. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the Court. See Fed R. Civ. P. 12(b)(1). If a plaintiff lacks Article III standing to bring a suit, the federal court lacks subject matter jurisdiction and the suit must be dismissed under Rule 12(b)(1). Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). In resolving a facial attack, the court assumes that the allegations are true and draws all reasonable inferences in the plaintiff's favor. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted). A court addressing a facial attack must confine its inquiry to the allegations in the complaint. See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty., 343 F.3d 1036, 1051 (9th Cir. 2003). Defendants here bring a facial attack to the Court's jurisdiction. ECF No. 38 at 14-15.

#### 2. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th

1 Cir. 2008). The Court must "accept all factual allegations in the complaint as true and construe
2 the pleadings in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d
3 1068, 1072 (9th Cir. 2005).

### E. Request for Judicial Notice

Defendants request that the Court take judicial notice of the public documents referred to in their motion to dismiss. ECF No. 38 at 14, n.13. Plaintiffs request that the Court take judicial notice of the publicly accessible documents referred to in their Complaint and attached to their opposition to the motion to dismiss. ECF No. 48-13.

Federal Rule of Evidence 201 allows the Court to take judicial notice of a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Moreover, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Id. The Court may take judicial notice of public records, Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006), and facts within public records that are not subject to reasonable dispute, Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001). Accordingly, the Court takes judicial notice of the public records the parties have submitted.

## II. DISCUSSION

### A. Mootness

"A moot action is one where the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Headwaters, Inc. v. Bureau of Land Management, 893 F.2d 1012, 1015 (9th Cir. 1990) (internal quotes omitted). "[The Court] cannot take jurisdiction over a claim to which no effective relief can be granted." Id. (citing United States v. Geophysical Corp. of Alaska, 732 F.2d 693, 698 (9th Cir. 1984)).

Defendants argue that Plaintiffs' claims are moot because the TUCP Orders at issue have all expired, and Plaintiffs do not "contend that Reclamation or DWR has a currently filed or pending petition for such an urgency order at this time." ECF No. 38 at 16. Thus, Defendants argue, this case concerns only a hypothetical legal dispute about TUCP orders that might be issued in the future, and there is no live controversy before the Court because "there is nothing for EPA

to review." Id.  The Court disagrees.

EPA's "burden of demonstrating . . . mootness . . . is a heavy one." Greenpeace Action v. Franklin, 14 F.3d 1324, 1329 (9th Cir. 1992).  If injunctive relief is unavailable, the Court may still grant declaratory relief if the dispute is "capable of repetition, yet evading review." Davis v. Fed. Election Comm'n, 554 U.S. 724, 735 (2008).  A case qualifies for this exception if "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." Greenpeace Action, 14 F.3d at 1329.

The Court agrees with Plaintiffs that their claims meet this test.  First, the duration of the SWRCB process "is too short to allow full litigation before it ceases."  The SWRCB orders at the heart of the lawsuit are "limited to no more than 180 days," ECF No. 38 at 8, and other of its orders were in effect for less than 90 days.  ECF No. 1 at ¶¶37 & n.4.  Orders of such a short duration are likely to frustrate judicial review.  See Greenpeace Action, 14 F.3d at 1329-30 ("The regulation challenged was in effect for less than one year, making it difficult to obtain effective judicial review."); Alaska Ctr. For Env't v. U.S. Forest Serv., 189 F.3d 851, 855 (9th Cir. 1999).

The dispute is also reasonably likely to recur, because the SWRCB's conduct shows that it views temporary permits as the most expedient means to deal with California's drought, and recurring drought will remain a "brooding presence" over the state for the foreseeable future.  See Headwaters, 893 F.2d at 1015.[6]  Moreover, both EPA's position in this litigation and its track record *vis-a-vis* the SWRCB's earlier orders establishes that EPA will not review the SWRCB's future temporary orders of its own volition.  Also, the Governor's executive actions seemingly remain in effect.  See ECF No. 38 at 10.  Under this constellation of facts, Plaintiffs and the Court can reasonably expect that the challenged harms will recur.  See Alaska Ctr., 189 F.3d at 856.

---

[6] That California is currently enjoying a period of significant rainfall does not change the underlying reality that drought is part of the recurring California weather cycle.  For example, the Court takes judicial notice that one of the heaviest rainfall years on record, which occurred during the 2010-11 rainfall season, was followed shortly thereafter by the driest year on record, the 2014-15 rainfall season.  See California Department of Water Resources, California Data Exchange Center, California Snow Water Content, http://cdec.water.ca.gov/cdecapp/snowapp/swcchart.action (last accessed Jan. 27, 2017).

Plaintiffs' claim for declaratory relief is not moot.

**B.     Whether Plaintiffs Have Alleged A Nondiscretionary Duty on the Part of the EPA**

A "mandated, nondiscretionary duty imposed on the Administrator is a prerequisite for federal jurisdiction under the Clean Water Act citizen suit provision." Miccosukee Tribe of Indians of Fla. v. EPA, 105 F.3d 599, 602 (11th Cir. 1997).  Here, the parties dispute whether the issuance of the SWRCB's TUCP orders constitute revisions to the state's water quality standards: if they are, then the EPA has a duty to review the revisions; if they are not, then it doesn't.

Federal and state governments share the responsibility of monitoring and regulating water pollution pursuant to the Clean Water Act.  With regard to the states, "the CWA requires each state to establish water quality standards for bodies of water within the state's boundaries." ECF No. 1 ¶ 58; 33 U.S.C. § 1313(a)-(c); 40 C.F.R. § 130.3.  "The state must first designate the use or uses of a particular body of water," and then "designate water quality criteria that are sufficient to protect the designated uses." ECF No. 1 ¶ 58; 33 U.S.C. § 1313(c)(2)(A); 40 C.F.R. § 131.10; 40 C.F.R. §§ 131.6(c), 131.11.

As relevant here, the federal government's role is set by the Clean Water Act ("CWA"), which requires that, whenever a state revises a water quality standard, EPA must review and either approve or disapprove the revision. See 33 U.S.C. § 1313(c)(2)(A), (c)(3).  After the state submits its officially adopted revisions to the EPA, the EPA has either 60 days to approve the revisions, or 90 days to disapprove the revisions with an indication of the deficiencies in compliance and the changes needed to assure compliance for any new or revised State standard.  40 C.F.R. § 131.21.  The CWA allows for "any citizen" to bring suit against the EPA Administrator "where there is alleged a failure of the Administrator to perform any act or duty . . . which is not discretionary with the Administrator." 33 U.S.C. § 1365.  Plaintiffs bring such a citizen suit here, challenging "the failure of [Defendants] to carry out their mandatory federal oversight duties" under the CWA in failing to review the SWRCB's TUCP orders.

Defendants argue that the EPA has no duty to review the SWRCB orders, because those orders did not revise any state water quality standards.   Thus, the question presented in this

1   motion is simply whether or not Plaintiffs have adequately pleaded that the temporary orders
2   issued by the State throughout 2014–2016 qualify as "revisions" to the water quality standards in
3   the EPA-approved 1995 Bay-Delta Plan.[7]  The answer turns on what it means to "revise" a state
4   water quality standard.  To some extent, both Plaintiffs and Defendants acknowledge that the
5   Court should defer to EPA's interpretation of what constitutes a revision, but they disagree over
6   what EPA's position is.  See ECF No. 48 at 9.

    The EPA invokes the rule of Chevron deference to urge the Court to adopt its interpretation of Section 1313.  Under that doctrine, when reviewing an agency's construction of a statute it administers, courts must first decide "whether Congress has directly spoken to the precise question at issue," Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837, 842 (1984).  If so, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43.  However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843.  The parties agree that Congress has not spoken directly to interpret the term "water quality standard."  See, e.g., ECF No. 38 at 19.  The Court therefore looks to the agency's interpretation.

    To determine the agency's interpretation of the statute, the Court "look[s] first to the agency regulations, which are entitled to deference if they resolve the ambiguity in a reasonable manner." Coeur Alaska, Inc. v. Se. Alaska Conservation Council, 557 U.S. 261, 277–78 (2009).  If the regulations are also ambiguous, the Court "turn[s] to the agenc[y's] subsequent interpretation of those regulations." Id. at 278.  The Court must uphold the agency's interpretation unless it is "plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461 (1997).

    Here, "the definitional provision in the EPA regulations defines a water quality standard,

---

[7] The state has never submitted the SWRCB's TUCP orders to the EPA for review, but both parties agree that this fact is not material.  "Although the states are required to submit any new or revised standard for review, the EPA has an affirmative duty to review any new or revised standard regardless of whether the state makes a submission." ECF No. 1 ¶ 59 (citing, e.g., Fla. Pub. Interest Research Grp. Citizen Lobby v. U.S. Envtl. Prot. Agency, 386 F.3d 1070, 1073 (11th Cir. 2004)).

United States District Court
Northern District of California

but it does not define what a revised or new water quality standard is." Pine Creek Valley Watershed Assoc. v. United States Envtl. Prot. Agency, 137 F. Supp. 3d 767, 773 (E.D. Pa. 2015) (citing 40 C.F.R. § 131.3). Nor does the regulation answer the question posed by the SWRCB's orders: "is the EPA to review revised standards only when those standards come packaged as full-on water quality standards (regardless of whether the states submit them to the EPA) or is the EPA to review any revision to those standards, no matter what form it takes?" Id.

The EPA's own internal guidance, however, answers that question. The EPA articulated an "effects test" in its Water Quality Standards Handbook ("EPA Handbook"), entitled "What Provisions Constitute New or Revised Water Quality Standards Under Clean Water Act Section 303(c)." Chapter 1.5.1 of that Handbook sets forth a four-part definition for "new or revised quality standards":

> (1) Is it a legally binding provision adopted or established pursuant to state or tribal law?; (2) Does the provision address designated uses, water quality criteria to protect designated uses, and/or antidegradation requirements for waters of the United States?; (3) Does the provision express or establish the desired condition (e.g. designated uses, criteria) or instream level of protection (e.g., anti-degradation requirements) for waters of the United States immediately or mandate it will be expressed or established for such waters in the future?; (4) Does the provision establish a new WQS [water quality standard] or revise an existing WQS? . . . *A provision that establishes a new WQS or has the effect of changing an existing WQS would meet this consideration.* In contrast, a provision that simply implements a WQS without revising it would not constitute a new or revised WQS.

EPA Handbook 1.5.1 (emphasis added), ECF No. 48-2 at 5-6.

Plaintiffs contend that "EPA's Handbook provides clarity" (or an "interpretation of its own regulations") sufficient to determine that the State's actions here constitute revised water quality standards. ECF No. 48 at 9. And in their complaint, Plaintiffs contend that "SWRCB's orders modifying the water quality standards in the Bay-Delta and Central Valley Plans, as implemented by D-1641 and D-1422, satisfy each of the elements in the EPA Handbook definition of revised water quality standards requiring EPA review." ECF No. 1 ¶ 63.

While Plaintiffs acknowledge that "SWRCB's orders did not amend the text of the Bay-Delta and Central Valley Plans themselves," they argue that this is of no consequence in determining the EPA's review obligations because "the orders modified the requirements in D-1641 to meet water quality objectives in the Bay-Delta and Central Valley Plans." Id. ¶ 67. When

the SWRCB decided "not to implement a water quality objective" by "modifying the conditions of Reclamation's and DWR's licenses and permits under D-1641 and D-1422 such that they could operate the CVP and SWP in violation of the Bay-Delta and Central Valley Plans," they made a 'de facto amendment to a water quality objective in a water quality control plan,' even though that amendment was temporary. Id. (quoting State Water Res. Control Bd. Cases, 136 Cal.App.4th 674, 732 (2006)).

The EPA has several responses to this argument. First, it argues that the Handbook is not controlling, and that only an amendment to the Bay-Delta Plan itself can constitute a "revision." ECF No. 38 at 24 (arguing that "[a]bsent a bona fide State revision of [the Bay-Delta Plan], EPA has no statutory duty under CWA section 303(c) to review and approve or disapprove the State's actions."). The EPA essentially asks the Court to ignore the Handbook in favor of its litigation position in this Court and in other cases. See, e.g., Nw. Envtl. Advocates v. EPA, 855 F. Supp. 2d 1199 (D. Or. 2012). But the courts have not uniformly deferred to the EPA's litigation position, because that position is not reasonable. See id. at 1211 ("Thus, the court concludes that the EPA's construction of the statute regarding its nondiscretionary duty to review water quality standards is not based on a permissible construction of the statute."). In fact, prior cases have made it clear that in challenges like the present one, the EPA – and upon review, the Court – is required to determine whether state regulatory action like the TUCP orders change the state's water quality standards. Miccosukee Tribe of Indians of Florida v. U.S., E.P.A., 105 F.3d 599, 603 (11th Cir. 1997) ("Because citizen suit jurisdiction depended on whether or not the EFA constituted new or revised state water quality standards, invoking a mandatory duty of the Administrator, the district court had to decide independently the effect of the EFA on existing state standards."); FPIRG, 386 F.3d at 1088 (holding that "the district court erred by failing to conduct a thorough review of the *effect* of the [regulation at issue] on the water quality standards of Florida." (emphasis in original)). Thus, the fact that the EPA has taken a position in this litigation, without more, is not persuasive.

The EPA next argues that the courts that have relied on the "effects test" improperly omitted any mention of deference to the EPA. ECF No. 57 at 8. It is hard to know what to make

11

of this argument – the most likely explanation of the absence of this point is that neither the EPA nor any other party raised the issue, not that numerous federal courts ignored the issue even after it was properly placed before them.  Thus, the Court gives this point little weight.  In any event, regardless of the role that deference played in the FPIRG court's decision, the EPA *itself* subsequently concluded that FPIRG accurately stated the law regarding the EPA's obligations.  In its October 2012 publication, "What Is A New or Revised Water Quality Standard Under CWA 303(c)(3): Frequently Asked Questions," EPA Publication 820F12017, the EPA stated that "case law relating to what constitutes a new or revised WQS has been established in" FPIRG, and that in the EPA decision following the 2004 remand in the FPIRG litigation, "EPA determined that specific water quality criteria provisions in the IWR were new or revised WQS because they were legally binding provisions that define, change, or establish magnitude, duration or frequency of water quality criteria."[8]  The EPA's own language sounds remarkably like the effects test.  And at the hearing on this motion, counsel for both EPA and the Plaintiffs agreed that this standard was the correct one to apply in this case.  So it would seem that the FPIRG court accurately stated the policies of and obligations upon the EPA, even if it did not explicitly discuss the role of deference to that agency.[9]

Finally, Defendants argue that even if the Handbook states the correct test, "the Court should [nonetheless] defer to EPA's reading of the Act as not imposing a nondiscretionary duty on EPA in this instance," "given that EPA has never subjected the State's TUCP orders to review under CWA section 303(c)."  ECF No. 38 at 19.  This fact does not affect the Court's conclusion.  The EPA's lack of prior action does not necessarily represent a considered decision on its part not to apply the effects test to the TUCP, particularly given that the State has never submitted those

---

[8] Section 1.5.1 of the EPA Handbook contains a hyperlinked reference to the 2012 FAQ with the suggestion that the reader consult the FAQ "[f]or additional information on determining what provisions constitute new or revised WQS."  ECF No. 48-2 at 4.
[9] Even if there is a conflict between the EPA's litigation position and the guidance set forth in its Handbook, the Court concludes that, construing the facts in Plaintiffs' favor at this early stage of the litigation, Plaintiffs have provided "reason to suspect that [the EPA's litigation position] does not reflect the EPA's fair and considered judgment" as promulgated in its Handbook interpreting when something qualifies as a new or revised water quality standard.  Pine Creek, 137 F.Supp.3d at 776.

orders for review and any inference arising from EPA's past inaction is weak. Moreover, "the very fact that [a State] failed to properly amend" its water quality standards and "did not follow the mandated procedures" which require submission to EPA is "one factor the EPA would be required to consider in a section 303(c) review."

Lastly, Defendants suggest half-heartedly that their present litigation position actually complies with the EPA's Handbook definition, see ECF No. 57 at 13–15, but the language of the argument does not support its thesis. For example, Defendants state that "the Handbook merely acknowledges that EPA must itself evaluate 'the effect' of a particular provision of state law to determine if such provision actually revises water quality standards, even where a state does not expressly style the law as a revision to water quality standards and does not submit it to EPA for review." ECF No. 57 at 18. Yet that is precisely Plaintiffs' position – that the EPA must determine whether the State's TUCP orders are, in effect, revised water quality standards. Applying that standard here, the question is whether Defendants have demonstrated as a matter of law that the TUCP orders do not revise California's water quality standards. They have not.

## CONCLUSION

The Court concludes that this dispute is not moot, and that Plaintiffs have plausibly alleged a non-discretionary duty by the EPA to review the SWRCB orders at issue. The Court denies Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6).[10]

---

[10] Defendants also argue that adopting the "effects test" as Plaintiffs propose would violate the Ninth Circuit's "clear statement rule." ECF No. 38 at 24. The Ninth Circuit has described the rule as follows:

> [W]e have held that the nondiscretionary nature of the duty must be clear-cut—that is, readily ascertainable from the statute allegedly giving rise to the duty. We must be able to identify a "specific, unequivocal command" from the text of the statute at issue using traditional tools of statutory interpretation; it's not enough that such a command could be teased out "from an amalgamation of disputed statutory provisions and legislative history coupled with the EPA's own earlier interpretation."

WildEarth Guardians v. McCarthy, 772 F.3d 1179, 1182 (9th Cir. 2014) (citations omitted). Plaintiffs' position does not run afoul of the clear statement rule, because the EPA's duty to review revised water quality standards *is* clear-cut. See 33 U.S.C.A. § 1313(c)(2)(A) ("Whenever the State revises or adopts a new standard, such revised or new standard shall be submitted to the Administrator."); 1313(c)(3) ("If the Administrator determines that any such revised or new standard is not consistent with the applicable requirements of this chapter, he shall not later than

IT IS SO ORDERED.

Dated: February 7, 2017

> _____
> JON S. TIGAR
> United States District Judge

---

the ninetieth day after the date of submission of such standard notify the State and specify the changes to meet such requirements."). As set forth above, the question is not whether the EPA's duty is clear-cut, but whether the duty is triggered at all.

14